IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GEORGE MIMS,

Petitioner,                          No. 2:12-cv-200-MCE-EFB P

vs.

K. HARRINGTON,

Respondent.                          ORDER AND
                                     FINDINGS AND RECOMMENDATIONS
_____/

      Petitioner is a state prisoner proceeding without counsel proceeding on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a 2009 judgment of conviction entered against him in the Sacramento County Superior Court on charges of first degree murder with personal use of a firearm and unlawful possession of a firearm by a convicted felon, with two prior strike convictions for assault with a firearm.  He seeks relief on the alleged grounds that: (1) his trial and appellate counsel rendered ineffective assistance; and (2) the trial court violated his right to due process in allowing the prosecutor to impeach a defense witness with a prior conviction for juvenile misdemeanor vandalism.  Upon careful consideration of the record and the applicable law, it is recommended that petitioner's application for habeas corpus relief be denied.

/////

1

Petitioner has also filed two motions:  one requesting that the court take judicial notice of exhibits filed in support of the instant habeas petition, and another for the appointment of an investigator.  For the reasons that follow, petitioner's motion for judicial notice will be granted and his motion for an investigator will be denied.

## I.    Background

The facts of petitioner's crimes are the following.  At 4:04 a.m. on the morning of September 1, 2008, Sacramento Police Officer Michael Rinehart received a dispatch notifying him that gunshots had been fired "with a subject down" at 1440 69th Ave.  Reporter's Transcript on Appeal (RT) at 71-72.  Officer Rinehart drove to that location with lights and sirens flashing, arriving at 4:06 a.m.  *Id.* at 73.  He observed a "male subject laying face up in a driveway."  *Id.* The victim, Deshawn Wormley (Wormley), had sustained "multiple gunshot wounds" from an automatic firearm and was deceased.  *Id.* at 73, 75, 80, 110, 128-29, 155.  Brennah Conway (Conway) and Jasmine Booker (Booker) were both at the scene, standing near the victim.  *Id.* at 74, 76, 306.  Booker and Conway lived at 1440 69th Avenue, along with Wormley, Conway's boyfriend.  *Id.* at 169.  They told two other officers at the scene that "G-Man" had shot Wormley.  *Id.* at 298, 307.  G-Man is petitioner's nickname.  *Id.* at 172.

Booker testified that she had known petitioner for about 10 years and sometimes saw him at parties, but she did not see him often.  *Id.* at 171-72.  She stated that sometime on August 31, 2008, she spoke to petitioner on the telephone and he indicated he was going to come over to her house.  *Id.* at 175.  Later, at approximately 2:00 a.m. on September 1, 2008, she saw him in the driver's seat of a white Cadillac on her driveway.  *Id.* at 170-71, 172, 173.  Booker went outside and talked to petitioner for awhile.  *Id.* at 173-74.

While Booker was talking to petitioner, Conway and Wormley came out of the house.  *Id.* at 176.  Petitioner and Wormley had "an argument" about Conway.  *Id.* at 177.  Wormley told petitioner not to be disrespectful to his wife (Conway).  *Id.*  Booker told petitioner and Wormley to stop arguing.  *Id.* at 178.  She then saw petitioner pull out a gun and shoot Wormley.  *Id.* at

2

178, 180.  Petitioner fired more than one shot.  *Id.* at 180.  Booker did not see Wormley "do anything to cause that shooting."  *Id.* at 183.  Petitioner then backed the car out of the driveway and drove off.  *Id.* at 181.  Conway called an ambulance.  *Id.* at 182.  Booker later identified petitioner from a photographic lineup as the person who shot Wormley.  *Id.* at 185.

Conway testified that Wormley was shot in the driveway of the house on 69th Avenue where she was staying with Wormley and Booker.  *Id.* at 260.  At approximately 9:00 p.m. on the day before Wormley was shot, Conway had a conversation with petitioner, also known as G-man, on the driveway of Booker's home.  *Id.* at 261-62, 63.  At that time, petitioner was with a man named Anthony, who was Conway's cousin by marriage.  *Id.* at 262.  Petitioner and Anthony were seated in a cream-color or tan Cadillac.  *Id.* at 263-64.  Conway told petitioner and Anthony that "it was not okay for them to be there" because she was living at the house with her boyfriend.  *Id.* at 264.  Conway understood that petitioner was coming to see her at Booker's house.  *Id.* at 265.  Petitioner and Anthony then left.  *Id.*

Several hours after this conversation occurred, Wormley returned to the house.  *Id.*  Conway and Wormley then left the house, walked down the driveway, and walked by petitioner, who was sitting in the Cadillac talking to Booker.  *Id.* at 267-69.  After petitioner made a comment, Wormley walked up to petitioner's car and said "you don't talk to my wife like that."  *Id.* at 269.  A few more words were exchanged, and Conway heard Wormley say "Well, are you going to shoot me now?"  *Id.* at 270.  Conway saw that petitioner had a gun pointed at Wormley.  *Id.* at 270-71.  She then heard a "click" and "a bunch of gunshots."  *Id.* at 272.  Petitioner drove off.  *Id.* at 273.  Wormley tried a couple of times to breathe and then stopped breathing.  *Id.* at 274.  Conway later picked petitioner out of a photographic lineup as the person who shot Wormley.  *Id.* at 276.

The police impounded the white Cadillac at about 2:30 p.m. on September 1, 2008.  *Id.* at 159-60, 102, 111, 162.  Gunshot residue was found on the driver's side area of that vehicle.  *Id.* at 243-44.  Petitioner's hands were not tested for gunshot residue.  *Id.* at 246-47.

1    Petitioner was arrested at approximately 9:14 p.m. on September 1, 2008, while seated in

2    the passenger side of a white Ford Mustang.  *Id.* at 221-23.  Petitioner informed police that his

3    wife owned a Cadillac.  *Id.* at 377-78.  He also informed them that he was at Shawntai Ingram's

4    house from August 31 to September 1, 2008.  *Id.* at 379-80.

5    Shawntai Ingram testified that petitioner was at a barbeque at her house on Sunday,

6    August 31, 2008, and that he didn't leave her house until the afternoon of September 1, 2008.  *Id.*

7    at 316-21.  She did not see a white Cadillac at her house.  *Id.* at 322-23.  On cross-examination,

8    Ingram testified that she had been convicted of misdemeanor vandalism.  *Id.* at 323.

9    Edward Paris also testified that petitioner was at the barbeque at Ingram's house from August 31,

10   1008 through September 1, 2008.  *Id.* at 333-337.  He never saw a Cadillac outside the house.

11   *Id.* at 339.  Mr. Paris testified on cross-examination that he was convicted of two counts of

12   attempted robbery in 1992 and for possession of marijuana for sale in 1998.  *Id.* at 341.

13   After a trial,

14         A jury convicted defendant George Mims of first degree murder
       (Pen.Code, § 187, subd. (a)-count one) and, in connection with that
15     charge, found true the allegation he personally and intentionally
       discharged a firearm (§ 12022.53, subd. (d)) and the special
16     circumstance that defendant intended to kill the victim when he
       fired the gun from his car (§ 190.2, subd. (a)(21)).  The jury also
17     convicted defendant of unlawful possession of a firearm by a
       convicted felon (§ 12021, subd. (a)(1)-count two).  Thereafter, the
18     trial court found true allegations defendant had two prior strike
       convictions for assault with a firearm.

19

20   *People v. Mims*, No. C061644, 2010 WL 1138390, *1 (Cal.App.3d Dist. Mar. 25, 2010).

21   Petitioner was sentenced to "life without the possibility of parole on the murder conviction, 25

22   years to life on the firearm discharge enhancement (to be served consecutively), and 25 years to

23   life on the firearm possession charge (also to be served consecutively)."  *Id.*

24   On appeal, petitioner claimed that: "he should have received credit for the 111 days he

25   served in presentence custody; he should not have been ordered to pay a $10,000 parole

26   revocation restitution fine (§ 1202.45) because he will not be eligible for parole and his sentence

4

1   did not include a determinate term; and the abstract of judgment should be amended to

2   accurately reflect the sentence." *Id.* The California Court of Appeal agreed that the trial court

3   erred in these three respects. The appellate court ordered that the errors be corrected but

4   otherwise affirmed petitioner's judgment of conviction. *Id.*

5        On January 19, 2010, while petitioner's appeal was still pending in the California Court

6   of Appeal, he filed a petition for writ of habeas corpus in the California Supreme Court, claiming

7   that his trial counsel rendered ineffective assistance. ECF No. 1-1 at 17-29; ECF No. 14 at 8.

8   On July 14, 2010, the California Supreme Court denied that petition with a citation to *In re*

9   *Swain*, 34 Cal.2d 300, 304 (1949). ECF No. 1-1 at 31.

10       On November 17, 2010, petitioner filed a petition for writ of habeas corpus in the

11  California Superior Court. *Id.* at 33-48. Therein, he claimed that his trial counsel rendered

12  ineffective assistance and that the trial court violated his right to due process in allowing the

13  prosecution to impeach a defense witness with a prior conviction for juvenile misdemeanor

14  vandalism. *Id.* On December 17, 2010, the Superior Court denied that petition in a reasoned

15  decision. *Id.* at 50-54.

16       On approximately February 3, 2011, petitioner filed a petition for writ of habeas corpus

17  in the California Court of Appeal, claiming that: (1) his appellate counsel rendered ineffective

18  assistance in failing to exhaust meritorious claims on appeal; (2) his trial counsel rendered

19  ineffective assistance through numerous errors; and (3) the trial court erred in allowing the

20  prosecutor to impeach his "key witness" with a prior juvenile conviction for misdemeanor

21  vandalism. *Id.* at 56-73. The Court of Appeal summarily denied that petition by order dated

22  March 17, 2011. *Id.* at 75.

23       On April 26, 2011, petitioner filed a petition for writ of habeas corpus in the California

24  Supreme Court, raising the same claims that he raised in his petition filed in the Court of Appeal.

25  ECF No. 1-2 at 132-48. On October 12, 2011, the Supreme Court denied that petition with a

26  citation to *In re Clark*, 5 Cal.4th 750, 767-69 (1993). *Id.* at 149.

1    Petitioner commenced federal habeas proceedings by filing a petition for writ of habeas

2 in this court on January 25, 2012.  Respondent filed an answer on July 31, 2012.  Petitioner filed

3 a traverse on December 17, 2012 and an amended traverse on December 26, 2012.[1]

4 **II.    Analysis**

5    **A.  Standards for a Writ of Habeas Corpus**

6    An application for a writ of habeas corpus by a person in custody under a judgment of a

7 state court can be granted only for violations of the Constitution or laws of the United States.  28

8 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

9 application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010);

10 *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir.

11 2000).

12    Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

13 corpus relief:

14    An application for a writ of habeas corpus on behalf of a
 person in custody pursuant to the judgment of a State court shall
15    not be granted with respect to any claim that was adjudicated on
 the merits in State court proceedings unless the adjudication of the
16    claim -

17    (1) resulted in a decision that was contrary to, or involved
 an unreasonable application of, clearly established Federal law, as
18    determined by the Supreme Court of the United States; or

19    (2) resulted in a decision that was based on an unreasonable
 determination of the facts in light of the evidence presented in the
20    State court proceeding.

21 /////

22 /////

23

24    [1] Subsequent to the filing of his federal habeas petition, petitioner filed petitions for a
 writ of habeas corpus in the California Superior Court and California Court of Appeal.  Resp't's
25 Lodg. Docs. 11, 13.  Both of those petitions were denied.  Resp't's Lodg. Docs. 12, 14.
 However, petitioner has elected to proceed in this court only on the claims that were exhausted
26 in his habeas petition filed in the California Supreme Court on April 26, 2011.  ECF No. 16.

1    For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

2    holdings of the United States Supreme Court at the time of the state court decision.  *Stanley v.*

3    *Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06

4    (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is

5    clearly established and whether a state court applied that law unreasonably."  *Stanley*, 633 F.3d

6    at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

7    A state court decision is "contrary to" clearly established federal law if it applies a rule

8    contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

9    precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

10   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant

11   the writ if the state court identifies the correct governing legal principle from the Supreme

12   Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2]

13   *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360

14   F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ

15   simply because that court concludes in its independent judgment that the relevant state-court

16   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

17   application must also be unreasonable."  *Williams*, 529 U.S. at 412.  *See also Schriro v.*

18   *Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal

19   habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

20   the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

21   precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

22   of the state court's decision."  *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786

23   (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a

24

25           [2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be
      overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
      presented in the state court proceeding."  *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,

26   384 F.3d 628, 638 (9th Cir. 2004)).

7

1  condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

2  state court's ruling on the claim being presented in federal court was so lacking in justification

3  that there was an error well understood and comprehended in existing law beyond any possibility

4  for fairminded disagreement." *Richter*,131 S. Ct. at 786-87.

5         If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

6  court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

7  527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

8  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

9  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

10  considering de novo the constitutional issues raised.").

11         The court looks to the last reasoned state court decision as the basis for the state court

12  judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

13  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

14  previous state court decision, this court may consider both decisions to ascertain the reasoning of

15  the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When

16  a federal claim has been presented to a state court and the state court has denied relief, it may be

17  presumed that the state court adjudicated the claim on the merits in the absence of any indication

18  or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85.  This

19  presumption may be overcome by a showing "there is reason to think some other explanation for

20  the state court's decision is more likely." *Id*. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

21  803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims

22  but does not expressly address a federal claim, a federal habeas court must presume, subject to

23  rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___, U.S.

24  ___, ___, 133 S.Ct. 1088, 1091 (2013).

25  /////

26  /////

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).

**B. Petitioner's Claims**

**1. Ineffective Assistance of Trial Counsel**

Petitioner claims that his trial counsel rendered ineffective assistance through numerous errors. Each of these claims is addressed in turn below.

**a. Applicable Law**

The clearly established federal law for ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id.* at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id.* at 687–88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S.Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687).

1       A reviewing court is required to make every effort "to eliminate the distorting effects of

2  hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

3  conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 669; *see Richter*, 131

4  S.Ct. at 789.  Reviewing courts must also "indulge a strong presumption that counsel's conduct

5  falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

6  This presumption of reasonableness means that the court must "give the attorneys the benefit of

7  the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel

8  may have had for proceeding as they did." *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388,

9  1407 (2011) (internal quotation marks and alterations omitted).

10       Prejudice is found where "there is a reasonable probability that, but for counsel's

11  unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466

12  U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

13  outcome." *Id.*  "The likelihood of a different result must be substantial, not just conceivable."

14  *Richter*, 131 S.Ct. at 792.

15       Under AEDPA, "[t]he pivotal question is whether the state court's application of the

16  Strickland standard was unreasonable." *Id.* at 785.  "[B]ecause the Strickland standard is a

17  general standard, a state court has even more latitude to reasonably determine that a defendant

18  has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

19               **b. <u>Impeachment of Jasmine Booker</u>**

20       Petitioner claims that his trial counsel rendered ineffective assistance in failing to

21  impeach Jasmine Booker with her "extensive prior felony convictions."  ECF No. 1 at 7, 20-22.

22  He argues that because Booker's testimony was central to the prosecution's case, it was

23  "tacticaly [sic] imperative for the defense of the petitioner that trial counsel thoroughly and

24  effectively cross-examine her testimony."  *Id.* at 21.  Petitioner argues that but for his trial

25  counsel's failure to cross-examine Booker on the subject of her prior felony convictions, there is

26  a reasonable probability that "the jury would have weighed the [totality] of the evidence

1  differently and possibly reached a different verdict." *Id.* at 22.

2      Petitioner raised this claim for the first time in his habeas petition filed in the California

3  Superior Court.  The Superior Court rejected petitioner's arguments, ruling as follows:

> Petitioner argues that trial counsel did not impeach prosecution
> witness Jasmine Booker with her prior criminal convictions and
> her history of lying to police.  The attached documents indicate
> that the prosecution disclosed that Booker was previously
> convicted of numerous crimes, and that she was subject to
> impeachment for four of those offenses.  Petitioner has not
> attached any evidence to show that Booker was not impeached
> with these four offenses by either party.  Petitioner has highlighted
> the fact that in 2001, Booker was held in federal custody as a
> material witness, suggesting that she should have been impeached
> with that evidence.  However, he has not shown that being a
> material witness in any way involved moral turpitude.  Therefore,
> he has not shown that counsel could have done any more to
> impeach Booker's testimony.

12  ECF 1-1 at 52-53.

13      Petitioner raised this ineffective assistance of counsel claim again in a petition for a writ

14  of habeas corpus filed in the California Supreme Court.  As an exhibit to that petition, petitioner

15  attached the transcript of Booker's testimony, which reflected that she was not impeached by

16  either party with her record of prior convictions.  *See* RT at 168-213.  The California Supreme

17  Court denied this petition with a citation to *In re Clark*, 5 Cal.4th 750, 767-69 (1993).[3]

18  Respondent argues that the California Supreme Court's citation to *In re Clark* constitutes a state

19  procedural bar which precludes this court from addressing the merits of this claim of ineffective

20  assistance of counsel.

21      As a general rule, "[a] federal habeas court will not review a claim rejected by a state

22  court 'if the decision of [the state] court rests on a state law ground that is independent of the

23

---

24      [3] The pages from *In re Clark* cited by the California Supreme Court discuss claims that
    carry no risk of convicting an innocent person (i.e., any error was harmless), claims presented in
25  repeated applications for relief (successive petitions), piecemeal presentation of claims, and
    delay.  5 Cal.4th 767-69.  It is not clear from the Supreme Court's opinion which rule was being
26  applied to which claim[s] in petitioner's application for habeas relief.

1   federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S.___, ___,

2   131 S. Ct. 1120, 1127 (2011) (quoting *Beard v. Kindler*, 558 U.S. ___, ___, 130 S. Ct. 612, 615

3   (2009)).  *See also Maples v. Thomas*, ___U.S.___, ___, 132 S. Ct. 912, 922 (2012); *Greenway v.*

4   *Schriro*, 653 F.3d 790, 797 (9th Cir. 2011); *Calderon v. United States District Court (Bean)*, 96

5   F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).

6   However, a reviewing court need not invariably resolve the question of procedural default prior

7   to ruling on the merits of a claim.  *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *see also*

8   *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not

9   infrequently more complex than the merits issues presented by the appeal, so it may well make

10  sense in some instances to proceed to the merits if the result will be the same"); *Busby v. Dretke*,

11  359 F.3d 708, 720 (5th Cir. 2004) (noting that although the question of procedural default should

12  ordinarily be considered first, a reviewing court need not do so invariably, especially when the

13  issue turns on difficult questions of state law).  Thus, where deciding the merits of a claim

14  proves to be less complicated and less time-consuming than adjudicating the issue of procedural

15  default, a court may exercise discretion in its management of the case to reject the claims on

16  their merits and forgo an analysis of  procedural default.  *See Boyd v. Thompson*, 147 F.3d 1124,

17  1127 (9th Cir. 1998); *Batchelor v. Cupp*, 693 F.2d 859, 864 (9th Cir. 1982); *see also Franklin v.*

18  *Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) (citing *Lambrix*, 520 U.S. at 525.)  Under the

19  circumstances presented here, all of petitioner's claims of ineffective assistance of counsel can

20  be resolved more easily by addressing them on the merits.  Accordingly, the court will assume

21  that petitioner's claims are not defaulted.

22          With regard to petitioner's claim that his trial counsel rendered ineffective assistance in

23  failing to impeach Booker with her prior convictions, petitioner is not entitled to federal habeas

24  relief under either AEDPA analysis or de novo review.  Even assuming *arguendo* that

25  petitioner's trial counsel was deficient in failing to cross-examine Booker with her prior felony

26  convictions, petitioner cannot show that he suffered prejudice.  Booker and Conway both

1  testified that they saw petitioner shoot Deshawn Wormley, virtually in front of their eyes.  Their

2  testimony as to the chronology of events was consistent.  They both knew petitioner; therefore,

3  there was no question as to their ability to recognize him.  They also identified him at a

4  photographic lineup and at the scene of the killing.  There was no evidence introduced at trial

5  tending to show a motive for Booker to lie or to place blame on someone other than the actual

6  shooter.  In addition, there was evidence of gunshot residue on the driver's side of petitioner's

7  Cadillac.  In light of these facts, there is no "reasonable probability that, but for counsel's

8  unprofessional errors, the result of the proceeding would have been different."  *Strickland,* 466

9  U.S. at 694.  Evidence that Booker had been convicted of prior felonies would not have resulted

10  in a different verdict in this case.  Accordingly, petitioner is not entitled to relief on this claim.

11                         **c.  Impeachment of Brennah Conway**

12          Petitioner's next claim is that his trial counsel rendered ineffective assistance in failing to

13  present evidence that Conway was afraid to testify at his trial.  ECF No. 1 at 24-25.  He explains:

14                  Conway, had on numerous occasions failed to appear on court
                    dates and had been confined to an "electronic monitoring device"
15                  by the court as a condition upon her release from custody.  On two
                    separate court dates afterwards Conway failed to appear and the
16                  court issued a warrant for her arrest.

17  *Id.* at 25.  In other words, Conway was so afraid to testify at petitioner's trial that she had to be

18  placed under arrest in order to secure her attendance.  Petitioner argues that his trial counsel's

19  failure to bring this information to the attention of the jury "was substantially injurious to his

20  defense."  *Id.*

21          The California Superior Court rejected these arguments, reasoning as follows:

22                  Petitioner also contends that trial counsel should have impeached
                    prosecution witness Breannah Conway with evidence that she did
23                  not want to testify.  Petitioner suggests that Conway was being
                    coerced to testify in accordance with the prosecutor's wishes and
24                  was protecting the person who actually committed the crime.
                    First, Petitioner has not attached any evidence of Conway's
25                  testimony to show that she was not impeached.  Second, Petitioner
                    has not specified how Conway's reluctance to testify has a bearing
26                  on her credibility.  Finally, any evidence regarding the possible

                                           13

1
2
3
4

> culpability of Anthony Sanchez would only have been admissible
> if it "directly or circumstantially [linked him] to the actual
> perpetration of the crime." (*See People v. McWhorter* (2009) 47
> Cal.4th 318, 36 7.)  Since Petitioner has not shown that there was
> such evidence, he has not shown that Conway could have been
> questioned about Sanchez's possible involvement in the crime.

5   ECF No. 1-1 at 53.

6       Petitioner has failed to demonstrate either deficient performance or prejudice with respect

7   to this claim and is therefore not entitled to federal habeas relief.  Given the overwhelming

8   evidence that petitioner shot Wormley, evidence that Conway was reluctant to testify would not

9   have resulted in a different verdict.  As noted by the Superior Court, there is no competent

10  evidence that anyone else committed this crime, and petitioner does not even make that

11  allegation in the petition before this court.  Further, as noted by respondent, there is evidence in

12  the record that Conway was afraid to testify at petitioner's trial because of his involvement in

13  gang activity.  *See* RT at 19-20, 258.  As noted above, this court must give trial counsel "the

14  benefit of the doubt" and must "affirmatively entertain the range of possible reasons" he may

15  have had for proceeding as he did.  *Pinholster*, 131 S.Ct. at 1407.  Trial counsel's reluctance to

16  "impeach" Conway with her fear of testifying could reasonably have been based on his desire to

17  prevent the prosecutor from exploring the issue of petitioner's involvement with gangs.

18      Accordingly, for these reasons, petitioner is not entitled to habeas relief on this claim.

19                    **d.  Impeachment of Shawntai Ingram**

20      Petitioner's next claim for relief is that his trial counsel rendered ineffective assistance in

21  failing to object to the admission of evidence that witness Shawntai Ingram had been convicted

22  of juvenile misdemeanor vandalism.  ECF No. 1 at 23-24.  He argues that the admission of this

23  evidence damaged the credibility of witness Ingram "in a trial where testimonial evidence was at

24  the center of the contest presented at the trial."  *Id.* at 24.

25  /////

26  /////

14

The California Superior Court denied this claim, reasoning as follows:

> A witness may be impeached with a juvenile adjudication, so long as the conduct involves moral turpitude. (*People v. Rivera* (2003) 107 Cal.App.4th 1381-1382.) Misdemeanor conduct may be used for impeachment when it involves moral turpitude. (*People v. Wheeler* (1992) 4 Cal.4th 284.) Felony vandalism is a crime of moral turpitude. (*People v. Campbell* (1994) 23 Cal.App.4th 1488, 1496.) The *mens rea* of malice required for "any offense under [Penal Code] section 594" is sufficient to establish the readiness to do evil that is required of a crime of moral turpitude. (*Id.* at 1495.)
>
> On cross-examination, defense witness Shawntai Ingram admitted that she had been previously "convicted" of misdemeanor vandalism. Petitioner claims that this evidence was improperly admitted because it was not a felony conviction and that counsel should have objected. However, prior conduct other a [sic] felony conviction, such as a juvenile adjudication and/or misdemeanor conduct, may be used to impeach a witness, if it involves moral turpitude. Misdemeanor vandalism, which differs from felony vandalism only in the amount of the damage, requires a mental state of malice, which is sufficient to show moral turpitude. Therefore, even if counsel had objected to the admission of the evidence, Petitioner has not shown that it is likely that evidence of the prior vandalism would have been excluded, or that exclusion of that impeachment evidence likely would have affected the outcome of Petitioner's case.

ECF No. 1-1 at 51-52.

In the traverse, petitioner argues that evidence of Ingram's juvenile misdemeanor adjudication was not necessarily admissible under California law because its probative value was substantially outweighed by the danger of unfair prejudice. ECF No. 28 at 6. He also argues that "only by conjecyure [sic] can the court conclude that a misdemeanor vandalism offense reaches the degree of 'malice' sufficient to establish moral turpitude necessary to be used for impeachment purposes." *Id.* However, the state court's conclusion, based on an analysis of California law, that Ingram's juvenile misdemeanor adjudication was admissible as impeachment evidence at petitioner's trial is binding on this court. *See Waddington v. Sarausad*, 555 U.S. 179, 192 n.5 (2009) ("we have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions'"); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law . . . binds a federal court sitting in federal

1   habeas").  Because any objection to the admission of Ingram's juvenile misdemeanor conviction

2   would have been meritless, petitioner cannot show prejudice with respect to this claim.  *See*

3   *Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing *Boag v. Raines*, 769 F.2d 1341,

4   1344 (9th Cir. 1985) (an attorney's failure to make a meritless objection or motion does not

5   constitute ineffective assistance of counsel)).  *See also Matylinsky v. Budge*, 577 F.3d 1083,

6   1094 (9th Cir. 2009), *cert. denied*, 130 S.Ct. 1154 (2010) (counsel's failure to object to

7   testimony on hearsay grounds not ineffective where objection would have been properly

8   overruled); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action

9   can never be deficient performance").

10          Even if petitioner's trial counsel had successfully objected to cross-examination

11  questions about Ingram's prior juvenile misdemeanor adjudication, petitioner has failed to

12  demonstrate that the result of the proceedings would have been different.  Ingram's testimony

13  that petitioner was at her house from August 31, 2008 to September 1, 2008 was corroborated by

14  the testimony of Edward Paris.  Even though two witnesses testified to petitioner's alibi, the jury

15  chose not to believe this evidence and convicted petitioner of Wormley's shooting.  This court

16  cannot reasonably assume that the jury would have chosen to believe petitioner's alibi evidence

17  if Ingram had not been impeached with her juvenile misdemeanor conviction.  Put another way,

18  Ingram's conviction for misdemeanor vandalism could not have had a significant impact on her

19  credibility given the overwhelming nature of the evidence against petitioner.

20          For these reasons, petitioner is not entitled to federal habeas relief.

21                          e.  **Failure to Obtain Statements of Alibi Witnesses**

22          Petitioner claims his trial counsel rendered ineffective assistance in failing to call

23  witnesses, in addition to Ingram and Paris, who could have testified in support of his alibi

24  defense that he was at Ingram's home at the time of the murder.  ECF No. 1 at 26-27.

25  /////

26  /////

1     The Superior Court denied this claim, ruling as follows:

2 
> A petition alleging ineffective assistance of counsel based on the
> failure to obtain favorable evidence must show what evidence
> should or could have been obtained and what effect it would have
> had.  (*People v. Geddes* (1991) 1 Cal.App.4th 448, 454.)

4

5
> Petitioner argues that counsel failed to interview and call as
> witnesses numerous people who could have corroborated
> Petitioner's alibi.  Instead, counsel only called two witnesses, who
> were both impeached with prior convictions.  However, Petitioner
> does not identify any such potential witnesses or describe what
> evidence they may have provided.  Consequently, he has failed to
> show that counsel's omissions were unreasonable or prejudicial.

8

9 ECF 1-1 at 52.

10     In petitioner's habeas petitions filed in the California Superior Court and California Court

11 of Appeal after he filed his federal petition, petitioner attached declarations of two more people,

12 Tommie Ingram and Jennifer Echols, who attended the barbeque at the home of Shawntai

13 Ingram on the night of August 31, 2008.  Resp't's Lodg. Docs. No. 11, 13.  Both declarations,

14 which are identically worded, state that the declarants saw petitioner at the barbeque but that

15 they left around 12:00 a.m.  *Id.*  The California Superior Court denied this claim notwithstanding

16 the additional declarations, stating in pertinent part:

17
> Petitioner claims that trial counsel was ineffective for failing to
> interview and call two potential witnesses who could have
> corroborated Petitioner's alibi.  Although defense counsel
> presented the testimony of two other alibi witnesses (Shawntai
> Ingram and Edward Paris), he claims that both Ingram and Paris
> were impeached and that the additional alibi witnesses (Tommie
> Ingram and Jennifer Echols) would have corroborated the alibi.
> The attached declarations are essentially identical, each stating that
> the declarant was present at a barbecue at the home of Shawntai
> Ingram on August 31, 2008 and that at approximately midnight,
> Petitioner was very intoxicated and was carried or helped into the
> residence to spend the night.  Although Petitioner has not attached
> any evidence of the testimony at trial, the transcript of the
> preliminary hearing indicates that the murder occurred on
> September 1, 2008 at approximately 4:00 a.m.  Since neither of the
> declarations provides an alibi for Petitioner *at the time that the
> offense occurred*, Petitioner has not shown that the failure to call
> Tommie Ingram and/or Echols was unreasonable or prejudicial.

17

1   Resp't's Lodg. Doc. 12.

2      Assuming *arguendo* that this court may consider the declarations of Tommie Ingram and

3   Jennifer Echols in support of this claim of ineffective assistance of counsel,[4] petitioner is not

4   entitled to federal habeas relief.  As explained by the California Superior Court, the additional

5   declarations do not support petitioner's alibi defense because the witnesses do not claim to have

6   seen petitioner at or around the time of the shooting.  As a result, there is no reasonable

7   probability that, but for trial counsel's error in failing to introduce the testimony of Echols and

8   Ingram, "the result of the proceeding would have been different."  *See Strickland,* 466 U.S. at

9   694.  Accordingly, petitioner is not entitled to relief on this claim.[5]

10                          **f.  Gunshot Residue**

11      Petitioner claims that his trial counsel rendered ineffective assistance in failing to

12   introduce evidence that, two days prior to Wormley's shooting, he transported a gunshot victim

13   to the hospital.  ECF No. 1 at 26-28.  Petitioner states that, while driving to the hospital, he

14   "continuously touched and moved the victim in order to keep him conscious."  *Id.* at 27.  He

15   argues that gunshot residue on the victim's body could have explained the presence of gunshot

16   residue in his vehicle.  *Id.*

17   /////

18   _____

19      [4]  *See Pinholster*, 131 S.Ct. at 1398 ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

20      [5]  Nor would petitioner be entitled to habeas relief in the absence of the two additional
21   declarations that he filed in support of this claim in the state courts.  Without evidence as to what additional witnesses would have testified to at trial, a habeas petitioner cannot establish
22   prejudice with respect to a claim of ineffective assistance of counsel in failing to call trial witnesses.  *See Dows v. Wood*, 211 F.3d 480, 486-87 (2000) (no ineffective assistance of counsel
23   for failure to call witnesses where petitioner did not identify an actual witness, provide evidence that the witness would testify, or present an affidavit from the alleged witness); *Grisby v.*
24   *Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) (same); *United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective assistance because of counsel's failure to call a witness
25   where, among other things, there was no evidence in the record that the witness would testify); *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet prejudice
26   prong of ineffectiveness claim because he offered no indication of what potential witnesses would have testified to or how their testimony might have changed the outcome of the hearing).

1    The California Superior Court rejected these arguments, reasoning as follows:

2        According to the petition, a criminalist testified that Petitioner's
         vehicle had trace amounts of components consistent with gunshot
3        residue on it.  Petitioner claims that trial counsel failed to introduce
         evidence that two days before the murder, Petitioner drove a
4        gunshot victim to the hospital, which would explain the presence
         of gunshot residue particles on his vehicle.  Although Petitioner
5        has attached a copy of a police report to support his claim that he
         transported a gunshot victim to the hospital, there is no evidence to
6        suggest that Petitioner's theory, i.e., that gunshot residue could
         have been transferred from the victim to the outside of the car
7        door, was possible.  Since Petitioner has not shown that counsel's
         failure to introduce the evidence was prejudicial, he has not shown
8        that he is entitled to any relief.

9    ECF No. 1-1 at 53.

10        The Superior Court's conclusion that petitioner failed to show prejudice with respect to

11   this claim is not contrary to or an unreasonable application of *Strickland* and should not be set

12   aside.  Although it is undisputed that petitioner drove a gunshot victim to the hospital several

13   days prior to Wormley's murder, petitioner's unsupported assertion that gunshot residue could

14   have been transferred from his passenger to the driver's side of his vehicle, and that it would

15   have remained there two days after his drive to the hospital, is insufficient to establish prejudice.

16   There is no evidence before the court that the presence of the gunshot victim in petitioner's

17   vehicle could account for the residue found on the driver's side of the vehicle after Wormley's

18   shooting.  Petitioner's speculative allegations with respect to this claim fail to demonstrate either

19   deficient performance or prejudice.  *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995)

20   ("'[c]onclusory allegations which are not supported by a statement of specific facts do not

21   warrant habeas relief'") (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)).  Accordingly,

22   he is not entitled to federal habeas relief on this claim.

23                          **2.  Ineffective Assistance of Appellate Counsel**

24        Petitioner claims that his appellate counsel rendered ineffective assistance in failing to

25   raise unspecified "meritorious issues" on appeal.  Dckt No. 1 at 6, 20.  The court will assume

26   /////

1    that petitioner is claiming his appellate counsel should have raised on appeal the claims

2    contained in the instant habeas petition.

3            The *Strickland* standards apply to appellate counsel as well as trial counsel.  *Smith v.*

4    *Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989).

5    However, an indigent defendant "does not have a constitutional right to compel appointed

6    counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

7    professional judgment, decides not to present those points."  *Jones v. Barnes*, 463 U.S. 745, 751

8    (1983).  Counsel "must be allowed to decide what issues are to be pressed."  *Id.*  Otherwise, the

9    ability of counsel to present the client's case in accord with counsel's professional evaluation

10   would be "seriously undermined."  *Id.  See also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th

11   Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and

12   is not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

13   meritless arguments on a client's behalf.  *See Strickland*, 466 U.S. at 687-88 (requiring a

14   showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

15   to raise a weak issue.  *See Miller*, 882 F.2d at 1434.  In order to establish prejudice in this

16   context, petitioner must demonstrate that, but for counsel's errors, he probably would have

17   prevailed on appeal.  *Id.* at 1434 n.9.

18           This court has concluded that petitioner's claims contained in the instant petition are not

19   meritorious.  Accordingly, for the reasons described above, petitioner cannot demonstrate that he

20   probably would have prevailed if his appellate counsel had raised these claims on appeal.  *See*

21   *Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012) ("It should be obvious that the failure of an

22   attorney to raise a meritless claim is not prejudicial").  Appellate counsel's decision not to

23   include these claims in petitioner's direct appeal in state court, but instead to focus on claims that

24   counsel believed were more meritorious, was "within the range of competence demanded of

25   attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970).  Accordingly,

26   /////

1  petitioner is not entitled to relief on his claim that his appellate counsel rendered ineffective

2  assistance.

3  ### 3. Erroneous Admission of Evidence

4  Petitioner claims that the trial court erred in allowing the admission of evidence that

5  Shawntai Ingram had received an adjudication of juvenile misdemeanor vandalism.  ECF No. 1

6  at 8.  Citing *In re Dixon* (1953) 451 Cal.2d 756, 759, the California Superior Court denied this

7  claim on the grounds that it could have been raised on appeal and was therefore barred from

8  review.  ECF No. 1-1 at 50-51.  Assuming *arguendo* that this claim is not subject to a procedural

9  default, petitioner is not entitled to federal habeas relief.

10  This court will construe petitioner's allegations as a claim that the trial court violated his

11  right to due process in admitting evidence of Ingram's juvenile misdemeanor adjudication.[6]  In

12  federal court, a writ of habeas corpus will be granted for an erroneous admission of evidence

13  "only where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary

14  system will not be competent to uncover, recognize, and take due account of its shortcomings.'"

15  *Mancuso v. Olivarez*, 292 F.3d 939, 956 (9th Cir. 2002) (quoting *Barefoot v. Estelle*, 463 U.S.

16  880, 899 (1983)).  Evidence violates due process only if "there are no permissible inferences the

17  jury may draw from the evidence."  *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).

18  Evidence must "be of such quality as necessarily prevents a fair trial."  *Id.* (quoting

19  *Kealohapauole v. Shimoda*, 800 F.2d 1463 (9th Cir. 1986)).

20  Even so, as the Ninth Circuit has observed:

21  The Supreme Court has made very few rulings regarding the
   admission of evidence as a violation of due process.  Although the
22  Court has been clear that a writ should be issued when
   constitutional errors have rendered the trial fundamentally unfair
23  (citation omitted), it has not yet made a clear ruling that admission
   of irrelevant or overtly prejudicial evidence constitutes a due
24  process violation sufficient to warrant issuance of the writ.

25

26  [6] Although the petition refers to attached points and authorities for further argument on
   this claim (*see id.*), the claim is not addressed in the points and authorities.

1   *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).  Therefore, "under AEDPA, even

2   clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit

3   the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as

4   laid out by the Supreme Court."  *Id.  See also Greel v. Martel*, No. 10-16847, 472 Fed. Appx.

5   503, 504, 2012 WL 907215, *1 (9th Cir. Mar. 19, 2012) ("There is likewise no clearly

6   established federal law that admitting prejudicial evidence violates due process.").

7          In light of these authorities, the state court's rejection of petitioner's claim that the trial

8   court violated his right to due process in allowing the admission of evidence that Ingram had

9   received an adjudication of misdemeanor vandalism does not support habeas relief under

10  AEDPA.  There is no "clearly established federal law" that the admission into evidence of a

11  witness' prior history of misdemeanor convictions violates the due process clause.

12         Even assuming *arguendo* that the admission of this evidence involved an error by the

13  trial court, it did not render petitioner's trial fundamentally unfair.  The challenged evidence was

14  relevant to evaluate the credibility of Ingram's testimony and was not so prejudicial as to prevent

15  a fair trial.  Accordingly, petitioner is not entitled to habeas relief on this due process claim.

16         **C.  Motion for an Investigator**

17         On March 7, 2013, petitioner filed a motion for the appointment of investigator Andrew

18  Savcudo of Andrew Savcudo Services.  ECF No. 30.  Petitioner explains that he needs an

19  investigator to obtain information from three witnesses who can verify that he drove a gunshot

20  victim to the hospital shortly before Wormley's shooting, and who can provide information

21  about the gunshot residue found in his car.  *Id.* at 2.  Petitioner identifies two of these witnesses:

22  J. Greathouse, the police officer who wrote a report describing the delivery of the gunshot victim

23  to the hospital in petitioner's vehicle; and Lesette Van Winden, a nurse who brought the gunshot

24  victim into the hospital from the car.  Petitioner asserts that if the court does not grant his

25  motion, his habeas petition will be "incomplete."  *Id.*  Attached to petitioner's motion are: (1)

26  Officer Greathouse's report, which was also filed as an exhibit to the instant habeas petition; and

22

1   (2) a portion of petitioner's trial transcript containing the testimony of the criminologist who

2   testified about the existence of gunshot residue found in petitioner's car.  *Id.* at 6-8.  Petitioner is

3   essentially requesting that he be allowed to conduct discovery in support of his claim that his

4   trial counsel rendered ineffective assistance in failing to introduce evidence that the gunshot

5   residue found in his vehicle may have come from the gunshot victim he drove to the hospital.

6        A habeas petitioner is not entitled to discovery as a matter of course, but only upon a

7   fact-specific showing of good cause and in the court's exercise of discretion.  Rule 6(a), Rules

8   Governing § 2254 Cases; *Bracy v. Gramley*, 520 U.S. 899 (1997); *Harris v. Nelson*, 394 U.S.

9   286 (1969); *Rich v. Calderon*, 187 F.3d 1064, 1068 (9th Cir. 1999) (discovery is available "only

10  in the discretion of the court and for good cause"); *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir.

11  1997).  The burden of demonstrating the materiality of the information requested is on the

12  moving party.  *Stanford v. Parker*, 266 F.3d 442, 461 (6th Cir. 2001) (citing *Murphy v. Johnson*,

13  205 F.3d 809, 813–15 (5th Cir. 2000)).  "Bald assertions and conclusory allegations do not

14  provide sufficient ground to warrant requiring the state to respond to discovery or require an

15  evidentiary hearing."  *Parker*, 266 F.3d at 460.  Good cause exists "where specific allegations

16  before the court show reason to believe that the petitioner may, if the facts are fully developed,

17  be able to demonstrate that he is entitled to relief.  *Bracy*, 520 U.S. at 908–09.

18       Here, petitioner has failed to demonstrate good cause for the discovery that he seeks.  To

19  the extent petitioner seeks to interview witnesses, including the two witnesses he has identified,

20  he has failed to support his requests with the required specificity.  Petitioner has not provided

21  evidence that any witnesses he has identified would have agreed to testify in his favor, nor has he

22  explained the nature of the information they would provide.  Petitioner has also failed to explain

23  why the discovery that he now seeks is any different from the discovery that was available to

24  him in state court.  It is entirely possible that petitioner's trial counsel conducted the same

25  investigation that petitioner now seeks to undertake through his discovery motion and found it

26  unproductive, or decided that the discovery was not material to the defense.  Indeed, petitioner

1   states that his trial counsel was aware of these witnesses by "trial counsels own discovery."  ECF

2   No. 30 at 2.

3       Petitioner is essentially seeking to now hire an investigator to interview various persons

4   on the chance that they will provide helpful information in support of his claim of ineffective

5   assistance of counsel.  The habeas discovery rules do not permit such a wide ranging exercise,

6   nor do they allow a petitioner to investigate his case anew after he has been convicted.  Habeas

7   petitioners may not seek to use discovery as a "fishing expedition . . . to explore their case in

8   search of its existence."  *Rich*, 187 F.3d at 1067 (quoting *Calderon v. U.S.D.C. (Nicolaus)*, 98

9   F.3d 1102, 1106 (9th Cir. 1996)).  *See also Kemp v. Ryan*, 638 F.3d 1245, 1260 (9th Cir. 2011)

10  (same).  Similarly, "good cause for discovery cannot arise from mere speculation" and

11  "discovery cannot be ordered on the basis of pure hypothesis."  *Arthur v. Allen*, 459 F.3d 1310,

12  1311 (11th Cir. 2006).

13      Finally, and most important, this court has concluded that none of petitioner's habeas

14  claims have merit.  Petitioner has not convinced the court that the appointment of an investigator

15  to interview witnesses would entitle him to federal habeas relief on any claim.  Nor has

16  petitioner demonstrated a "reason to believe that [he] may, if the facts are fully developed, be

17  able to demonstrate that he is confined illegally and is therefore entitled to relief."  *Harris v.*

18  *Nelson*, 394 U.S. 286, 300 (1969).  In short, there is no good cause to conduct further discovery

19  with respect to any of petitioner's habeas claims and his request for an investigator/discovery

20  should be denied.[7]

21  /////

22  /////

23

24      [7] The court also notes that respondent does not deny that petitioner drove a gunshot
    victim to the hospital shortly before the shooting at issue in this case, and this court has assumed
25  for purposes of this matter that petitioner did so.  There is no need to obtain more evidence as to
    this undisputed fact.  To the extent petitioner wishes to provide additional information tending to
26  verify that petitioner drove a gunshot victim to the hospital, his request is cumulative and
    unnecessary.

**D.  Motion for Judicial Notice**

In a motion filed on December 26, 2012, petitioner requests that the court take judicial notice of the exhibits he has filed in support of his federal habeas petition; to wit: (1) habeas petitions and other challenges to petitioner's conviction filed in the California courts and the rulings thereon; (2) several portions of petitioner's trial transcript; and (3) a report of the Sacramento Sheriff's Department which reflects that petitioner drove a gunshot victim to the hospital on August 30, 2008.  ECF No. 29 at 3-4.  These facts are appropriate for judicial notice. *See* Fed. R. Evid. 201 (b), (c); *White v. Martel*, 601 F.3d 882, 885 (9th Cir. 2010).  Accordingly, petitioner's request for judicial notice will be granted.  However, the facts contained in petitioner's exhibits do not alter this court's analysis of the claims contained in the instant federal habeas petition.

**III.  Conclusion**

For all of the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Petitioner's December 26, 2012 request for judicial notice (ECF No. 29) is granted; and

2.  Petitioner's March 7, 2013 motion for the appointment of an investigator (ECF No. 30) is denied.

Further, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In

his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  August 5, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE